Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENJAMIN ANDERSON, | Case No.: |
| Plaintiff, | **Complaint For:** |
| vs. | (1) Violation of § 14 (a) of the Securities Exchange Act of 1934 |
| DECISIONPOINT SYSTEMS, INC., STANLEY JAWORSKI, RICHARD BRAVMAN, WILLIAM COOKE, JOHN GUTTILLA, STEVE SMITH, and MICHAEL TAGLICH. | (2) Violation of § 20(a) of the Securities Exchange Act of 1934 |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff, Benjamin Anderson ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings this stockholder action against DecisionPoint Systems, Inc. ("DecisionPoint" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Barcoding Derby Buyer, Inc., ("Parent")

through merger vehicle Derby Merger Sub, Inc. ("Merger Sub") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction"). Parent and Merger Sub are affiliates of Barcoding Holdings, LLC (together with Parent and Merger Sub, "Barcoding"), a portfolio company of Graham Partners.

2. The terms of the Proposed Transaction were memorialized in a May 1, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the Definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, DecisionPoint stockholders will receive $10.22 per share in cash for each share they hold.

3. Thereafter, on May 20, 2024, the Company filed its Preliminary Proxy Statement (the "Proxy Statement") on Schedule 14A with the United States Securities and Exchange Commission (the "SEC").

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: (a) Company insiders own company shares, company options, and restricted stock units, all of which are subject to accelerated vesting and conversion into merger consideration; and (b) certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5. The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Proxy

Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for DecisionPoint, provided by the Company to the Company's financial advisor, Craig-Hallum Capital Group LLC ("Craig-Hallum"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Craig-Hallum, and provided to the Board.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

7. Plaintiff is a citizen of Tennessee and, at all times relevant hereto, has been a DecisionPoint stockholder.

8. Defendant DecisionPoint, through its subsidiaries, designs, consults, and implements mobility-first enterprise solutions and retail solutions centered on point-of-sale systems and services. DecisionPoint is incorporated under the laws of the State of Delaware and has its principal place of business at 1615 South Congress Avenue, Suite 103, Delray Beach, FL 33445. Shares of DecisionPoint common stock are traded on the New York Stock Exchange ("NYSE") under the symbol "DPSI."

9. Defendant Stanley Jaworski ("Jaworski") has been the Chairman of the Board of Directors of the Company at all relevant times.

10. Defendant Richard Bravman ("Bravman") has been a director of the Company at all relevant times.

11. Defendant William Cooke ("Cooke") has been a director of the Company at all relevant times.

12. Defendant John Guttilla ("Guttilla") has been a director of the Company at all relevant times.

13. Defendant Steve Smith ("Smith") has been a director of the Company at all relevant times. In addition, Defendant Smith serves as the Company's Chief Executive Officer ("CEO").

14. Defendant Michael Taglich ("Taglich") has been a director of the Company at all relevant times.

15. Defendants identified in ¶¶ 9-14 are collectively referred to as the "Individual Defendants."

16. Non-Party Parent is an affiliate of Barcoding Holdings, LLC.

17. Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

19. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NYSE which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

21. Defendant DecisionPoint, through its subsidiaries, designs, consults, and implements mobility-first enterprise solutions and retail solutions centered on point-of-sale systems and services.

22. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the April 1, 2024, press release announcing its 2023 Q4 and Full Year financial results, the Company highlighted such milestones as: Revenue increased 24.8% to $30.5 million; Gross Profit increased 18.7% to $7.5 million; GAAP Operating Income increased 3.7% at $0.7 million; and Adjusted EBITDA increased 8.4% to $1.9 million.

23. Speaking on these positive results, CEO Defendant Smith commented on the Company's positive financial results as follows, "2023 was a year of investment, repositioning DecisionPoint for continued long-term revenue growth, gross margin expansion and higher profitability with our operating leverage. The combined acquisition of MIS, our release of the Vision Portal and preparing for the recent January introduction of PointCare Services were key elements in this repositioning, as the former significantly increased our software and services mix, while the latter will form the basis of our nascent Mobile Managed Services (MMS) offering."

24. These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success by DecisionPoint. Based upon these positive financial results and outlook, the Company is likely to have future success.

*The Flawed Sales Process*

25. As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed to effectuate a sale of the Company to Barcoding.

26. The Proxy Statement fails to disclose how the updated projections, created by Company Management on or around April 15, 2024 and provided to representatives of Barcoding, differed from the set of projections that were originally prepared by Company Management on or around March 24, 2024.

27. Mover, the Proxy Statement fails to provide any explanation as to Company Management's reason for updating the financial projections in connection with the negotiation of the Proposed transaction.

28. In addition, the Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Barcoding and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

29. Moreover, the Proxy Statement fails to adequately disclose the totality of communications regarding post-transaction employment during the negotiation of the underlying transaction.

30. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

31. On May 1, 2024, DecisionPoint and Barcoding issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> DELRAY BEACH, Fla.--(BUSINESS WIRE)-- DecisionPoint Systems, Inc. (NYSE American: DPSI), a leading mobility-first enterprise services and solutions company and a leading provider of retail in-store solutions and services centered on Point-of-Sale systems, today announced that it entered into a definitive agreement to merge with an affiliate of Barcoding Holdings, LLC ("Barcoding"), a portfolio company of Graham Partners, in an all-cash transaction.
>
> Steve Smith, CEO of DecisionPoint, commented: "I'm excited by the prospects of teaming up with Barcoding for the next phase in DecisionPoint's growth. We've spent the past seven years rebuilding and repositioning DecisionPoint as a leader in the mobility-first enterprise space and, over the past year, significantly expanded our market opportunity within retail and services by acquiring Macro Integration Services. During this time, our organic and M&A-driven growth strategy has delivered 20% annual revenue growth and higher margins and profits. Today's announcement to be taken private for $10.22 in cash per share is a capstone for our public shareholders.
>
> "While this is the end of an era for our public shareholders, the benefits for employees, customers and partners are just beginning. The combined company will have immediate scale and significant cross-selling opportunities for our employees to pursue, as our overall offering, including our recent investments in managed services, complements Barcoding's offerings in data capture, printing and labeling and mobile computing. From a vendor and partner standpoint, we already share several strategic partners. We believe this combination will strengthen those relationships, and now, both companies will have the opportunity to build new relationships across each other's ecosystems. And finally but most importantly, both companies place a high value on employee satisfaction, as we recognize our associates are the lifeblood of our organizations."
>
> Under the terms of the agreement, DecisionPoint stockholders will receive $10.22 per share in cash, representing an approximate 27% premium over the closing price of $8.05 on April 30, 2024, and a year-to-date return of 63% over the $6.26 per share price on the last trading day of 2023.
>
> Mike Stewart, Principal of Graham Partners, added, "We are excited about the combination of Barcoding and DecisionPoint, which brings together two experienced management teams and creates an integrator of scale in supply chain automation. Furthermore, the combined business is anticipated to enhance the value proposition for customers, adding service offerings across a customer's device life cycle and establishing a national footprint."

**Transaction Timing and Effects**

DecisionPoint's board of directors unanimously approved the merger agreement and recommended that stockholders vote in favor of the merger. The Company will send out a proxy and host a special meeting for shareholders to vote on the merger in the near future. The transaction is currently expected to close in July 2024, subject to the approval of DecisionPoint stockholders and the satisfaction of customary closing conditions. Closing of the transaction is not subject to a financing condition.

Upon completion of the transaction, DecisionPoint will become a privately held company and its stock will no longer be publicly traded. The Company will continue to operate under the DecisionPoint Systems name and brand.

*Potential Conflicts of Interest*

32.  The breakdown of the benefits of the deal indicates that DecisionPoint insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of DecisionPoint.

33.  In addition, Company insiders currently own company shares, options, and restricted stock units, all of which will be subject to accelerated vesting upon the consummation of the Proposed Transaction, and converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name | Shares (#)[1] | Value of Shares ($)[1] | Company Options (#)[2] | Value of Company Options ($)[2] | Company RSUs (#)[3] | Value of Company RSUs ($)[3] | Total Value ($) |
|---|---|---|---|---|---|---|---|
| Richard Bravman | 15,410 | 157,490 | 29,000 | 123,060 | — | — | $280,550 |
| William Cooke | 36,306 | 371,047 | 20,000 | 55,220 | — | — | $426,267 |
| John Guttilla | 42,188 | 431,161 | 24,000 | 79,860 | — | — | $511,021 |
| Stanley Jaworski | 18,269 | 186,709 | 111,500 | 607,020 | — | — | $793,729 |
| Steve Smith | 602,355 | 6,156,068 | 34,937 | 163,223 | 300,000 | 3,066,000 | $9,385,291 |
| Michael Taglich | 831,318 | 8,496,070 | 29,000 | 123,060 | — | — | $8,619,130 |
| Melinda Wohl | 26,715 | 273,027 | 46,666 | 214,970 | — | — | $487,997 |

34. In addition, employment agreements with certain DecisionPoint executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff. The golden parachute compensation is as follows:

*Golden Parachute Compensation Table*

| Name | Cash ($)(1) | Equity ($)(2) | Total ($) |
|---|---|---|---|
| Steve Smith | 477,405 | 3,229,223 | $3,706,628 |
| Melinda Wohl | 646,400 | 214,970 | $861,370 |

| Name | Base Salary Severance ($) | Transaction Bonus ($) |
|---|---|---|
| Steve Smith | 477,405 | — |
| Melinda Wohl | 250,000 | 396,400 |

35. The Proxy Statement also fails to adequately disclose the totality of communications regarding post-transaction employment during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

36. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

37. Thus, while the Proposed Transaction is not in the best interests of DecisionPoint, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Proxy Statement***

38. On May 20, 2024, the DecisionPoint Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

39. The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy Statement fails to disclose:

   a. How the updated projections, created by Company Management on or around April 15, 2024 and provided to representatives of Barcoding, differed from the set of projections that were originally prepared by Company Management on or around March 24, 2024;

   b. Adequate explanation as to Company Management's reason for updating the financial projections in connection with the negotiation of the Proposed transaction;

   c. Whether the confidentiality agreements entered into by the Company with Barcoding differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

    d.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Barcoding, would fall away; and

    e.   The totality of communications regarding post-transaction employment during the negotiation of the underlying transaction.

40.    This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning DecisionPoint's Financial Projections*

41.    The Proxy Statement fails to provide material information concerning financial projections for DecisionPoint provided by DecisionPoint management to the Board and Craig-Hallum and relied upon by Craig-Hallum in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

42.    Notably the Proxy Statement reveals that as part of its analyses, Craig-Hallum reviewed, "certain financial, operating, and business information related to the Company provided to Craig-Hallum by management of the Company."

43.    Therefore, the Proxy Statement should have, but fails to provide, certain information in the projections that DecisionPoint management provided to the Board and Craig-Hallum. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates

...

or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

44. With regard to the *Unaudited Prospective Financial Information* provided by DecisionPoint Management, the Proxy Statement fails to disclose material line items for the following metrics:

    a. Revenue, including all underlying inputs, metrics, and assumptions used to calculate same;

    b. Gross Profit, including all underlying inputs, metrics, and assumptions used to calculate same;

    c. Gross Profit Margin, including all underlying inputs, metrics, and assumptions used to calculate same;

    d. EBITDA, including all underlying inputs, metrics, and assumptions used to calculate same;

    e. EBIT, including all underlying inputs, metrics, and assumptions used to calculate same;

    f. Net Operating Profit, including all underlying inputs, metrics, and assumptions used to calculate same; and

    g. Unlevered Free Cash Flow, including all underlying inputs, metrics, and assumptions used to calculate same.

45. As set forth in the Proxy Statement, on or around April 15, 2024, Company provided updated financial projections and other metrics to representatives of Barcoding; however,

the Proxy Statement fails to disclose how the updated projections differed from the set of projections that were prepared by Company Management on or around March 24, 2024.

46. Mover, the Proxy Statement fails to provide any explanation as to Company Management's reason for updating the financial projections in connection with the negotiation of the Proposed transaction.

47. The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

48. This information is necessary to provide Plaintiff in his capacity as a Company stockholder with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

49. Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Craig-Hallum financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Craig-Hallum*

50. In the Proxy Statement, Craig-Hallum describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinions.

51. With respect to the *Premiums Paid Analysis*, the Proxy Statement fails to disclose:

    a. The specific companies analyzed;

    b. The date each of the analyzed transactions were announced;

    c. The aggregate value of each of the transactions analyzed;

    d. The underlying inputs, metrics, and assumptions used to determine the 1-Day Price Minimum, 25th Percentile, Median, 75th Percentile, Maximum, and Merger Consideration Premium utilized; and

    e. The underlying inputs, metrics, and assumptions used to determine the 1-Month Price Minimum, 25th Percentile, Median, 75th Percentile, Maximum, and Merger Consideration Premium utilized.

52. With respect to the *Analysis of Comparable Publicly Traded Companies*, the Proxy Statement fails to disclose:

    a. The underlying metrics observed for each of the Comparable Publicly Traded Companies Analyzed;

    b. The underlying inputs, metrics, and assumptions used to determine the EV/ 2023 Revenue Minimum multiple, 25th Percentile multiple, Median multiple, 75th Percentile multiple, and Maximum multiple utilized;

    c. The underlying inputs, metrics, and assumptions used to determine the EV/ 2024E Revenue Minimum multiple, 25th Percentile multiple, Median multiple, 75th Percentile multiple, and Maximum multiple utilized;

    d. The underlying inputs, metrics, and assumptions used to determine the EV/ 2023 EBITDA Minimum multiple, 25th Percentile multiple, Median multiple, 75th Percentile multiple, and Maximum multiple utilized; and

    e. The underlying inputs, metrics, and assumptions used to determine the EV/ 2024E EBITDA Minimum multiple, 25th Percentile multiple, Median multiple, 75th Percentile multiple, and Maximum multiple utilized.

53. With respect to the *Analysis of Comparable M&A Transactions*, the Proxy Statement fails to disclose:

    a. The aggregate value of each selected transaction; and

    b. The underlying inputs, metrics, and assumptions used to determine the EV/ LTM Revenue Minimum multiple, 25th Percentile multiple, Median multiple, 75th Percentile multiple, and Maximum multiple utilized.

54. Regarding the *Discounted Cash Flow Analysis*, disclose:

    a. The underlying inputs, metrics, and assumptions used to determine the terminal LTM Revenue multiples range of 0.5x to 2.5x utilized;

    b. The underlying inputs, metrics, and assumptions used to determine the terminal LTM EBITDA multiples range of 8.0x to 12.0x utilized;

    c. The underlying inputs, metrics, and assumptions used to determine discount rate range of 16.0% to 20.0% utilized;

    d. The underlying inputs, metrics, and assumptions used to determine DecisionPoint's weighted average cost of capital utilized; and

    e. The implied enterprise value for DecisionPoint, calculated.

55. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

56. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the Proposed Transaction truly maximizes his value

and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public DecisionPoint stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

### FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

57. Plaintiff repeats all previous allegations as if set forth in full herein.

58. Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

59. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

60. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:
No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the

circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

61. The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

62. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

63. The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

64. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

65. Plaintiff repeats all previous allegations as if set forth in full herein.

66. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

67. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement; and nevertheless, approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

68. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of DecisionPoint's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information

available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

69. The Individual Defendants acted as controlling persons of DecisionPoint within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause DecisionPoint to engage in the wrongful conduct complained of herein. The Individual Defendants controlled DecisionPoint and all of its employees.  As alleged above, DecisionPoint is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 28, 2024　　　　　　　　　　**BRODSKY & SMITH**

By: *Evan J. Smith*
　　　Evan J. Smith
　　　240 Mineola Boulevard
　　　Mineola, NY 11501
　　　Phone: (516) 741-4977
　　　Facsimile (561) 741-0626

　　　*Counsel for Plaintiff*